## SPENCER v. DUNCAN.[*]

### No. 15,700; June 4, 1895.

#### 40 Pac. 548.

**Limitation of Actions—Denial of Trust—Sufficiency.**—Where, in an action to compel defendant to account for money belonging to plaintiff, placed in his hands, and invested by him in a lot without authority, the evidence was that, when plaintiff went to defendant for a settlement, he began to talk about the lot, but, on plaintiff telling him she did not come to talk about the lot, but for a settlement, defendant began to talk about the imprisonment of his brother, whereupon plaintiff left his office, there was not shown a sufficient denial of the trust by defendant to put in operation the statute of limitations against plaintiff's claim.

———————

[*] See 107 Cal. 423, 40 Pac. 549.

APPEAL from Superior Court, City and County of San Francisco; William T. Wallace, Judge.

Action by John C. Spencer, administrator of Rebecca Spencer, deceased, against William L. Duncan, to compel defendant to account for money held by him in trust for decedent. Judgment was rendered for plaintiff, and from an order denying a motion for a new trial defendant appeals. Affirmed.

W. C. Burnett and Estee & Miller for appellant; Geo. M. Spencer and Bull & Cleary for respondent.

SEARLS, C.—This is an action to compel the defendant to account for and pay to plaintiff funds alleged to be held by him in trust for the plaintiff, Rebecca Spencer, who departed this life during the pendency of the action, whereupon John C. Spencer, administrator of her estate, was substituted as plaintiff herein. Plaintiff had judgment for $1,071.85 and interest from May 1, 1870, amounting in the aggregate to $2,678.73 and costs. This appeal is from an order denying defendant's motion for a new trial. There is a separate appeal in the same case from the final judgment. The theory of Rebecca Spencer, the then plaintiff in the case, as delineated by testimony at the trial, was: That she was a school teacher at Calistoga, of the age of sixty-nine years. About March 24, 1869, she had $2,200 in the Bank of California, which she drew with a view of taking it with her the next morning to Napa county, where she expected to loan it temporarily. Being dissuaded from carrying so much money with her, she went in the evening to the home of Dr. Lucky, an old friend, and also a teacher; and, the doctor being absent, she left $2,160 of the money with his wife, to be by the doctor deposited in a savings bank, and the certificate to be sent to her at Calistoga, where she went early next morning. On or about April 20, 1869, she received a letter from Dr. Lucky, dated April 1, 1869, in which he informed her he had placed her money in the hands of William L. Duncan (his son in law), who would dispose of it so as to secure her one and one-fourth per cent per month interest, and that the latter recommended her to purchase an interest in a homestead company, of which his brother, J. C. Duncan, was secretary, and recommended the purchase. The letter indicates

that Duncan had already purchased the interest for her, and inclosed circulars, etc. By advice of friends, Miss Spencer came to San Francisco, interviewed Lucky, who extolled the investment as a fine one, etc., but she declined it, and told him all she wanted was her money. She interviewed Duncan about the first of 1870, told him she wanted no investment, but did want her money. About March, 1870, Miss Spencer received $1,088 of the money from Duncan, and he then agreed, according to her testimony, to hold the residue of the fund in trust for her, which she informed him she might want any day. This outline of plaintiff's testimony must serve in place of a fuller statement to convey an idea of the origin and condition of affairs between the parties.

The theory of defendant, Duncan, was that Dr. Lucky came to him, and said a friend of his wife had some money which she wished to invest, and would like to invest a part of it in a lot in this city; that he took the money, gave a demand note for the amount ($2,160), with interest at one and one-fourth per cent per month; bought a share in a homestead corporation, which, upon certain payments being made, called for a lot; that he made such payments from the funds in his hands, received a certificate for the lot, and delivered it to plaintiff with the residue of the money in his hands, etc., to all of which the said Rebecca Spencer assented. These were the theories around which the testimony clustered, and in support of which a number of witnesses testified. That there was a sharp conflict in the testimony, that some of the witnesses were either very forgetful or untruthful, is quite apparent from the record. The court below evidently believed that there was a deliberate attempt on the part of defendant and his family friends to absorb the funds of the plaintiff, and to foist upon her property in lieu thereof which she had not authorized them to purchase for her, and which she did not want; and that, relying on her inexperience, they wove around her a train of circumstances tending to render their course plausible, while on close scrutiny the fraudulent conduct of defendant in the premises was apparent. We say this must have been substantially the conclusion to which the court below arrived, and, without stopping to analyze the testimony, and showing therefrom the suspicious circumstances pointing with more or less directness to the result reached by the court, it is sufficient to say here that there is sufficient testimony to

uphold the findings of the court if it believed the statements of plaintiff's witnesses rather than those of the defendant in conflict therewith.

Upon the question of the claim of plaintiff being barred by the statute of limitations there was also a substantial conflict in the evidence. It is well settled that in cases of trust the statute does not begin to run until the trustee, by word or act, denies the trust, and the beneficiary has notice of such denial. On the twenty-third day of October, 1888, defendant, in a letter to one Knox, an attorney, who had made a demand upon him, repudiated and denied the trust. This action was brought within two years next thereafter, viz., January 14, 1890. Plaintiff says that she called upon defendant for a settlement in 1874, and that defendant began to talk about the lot, to which she replied that she did not come to talk about the lot, but a settlement, and that defendant then spoke of his brother (J. C. Duncan) being in prison, "and seemed very much overcome, and I walked out of the office." She further adds that "he did not refuse to give me my money, but he turned the conversation by talking about his brother." Defendant testified that the money was demanded from him as early as 1874. If he was to be believed, the action is barred. The court below evidently disbelieved him. This being so, the court, under the previous rulings of this court, was justified in finding that the demand was not barred by the statute of limitations: Schroeder v. Jahns, 27 Cal. 274; Zuck v. Culp, 59 Cal. 143; Broder v. Conklin, 77 Cal. 331, 19 Pac. 513; Wood, Lim., sec. 413. The findings support the judgment, and the order appealed from should be affirmed.

We concur: Britt, C.; Belcher, C.

PER CURIAM.—For the reasons given in the foregoing opinion the order appealed from is affirmed.