Davis v. Dunne.

## DAVIS v. DUNNE ET AL.

1. **Conveyance**: WHEN VOIDABLE: UNDUE INFLUENCE. The plaintiff, an only child, and a minor at the time of her father's death, continued to reside in the family with her step-mother and the latter's children by a former marriage until she attained her majority, when, at the solicitation of the step-mother and her son, plaintiff conveyed to the latter, for an inadequate consideration, her interest in her father's estate, of the extent and value of which she was ignorant: *Held*, that the conveyance was voidable and would be set aside upon her application.

*Appeal from Jones District Court.*

WEDNESDAY, OCTOBER 17.

ACTION in equity commenced in 1869, and tried in the court below by the first method; the object of the action being to set aside and cancel a conveyance of certain real estate made by the plaintiff to the defendant, Edward Dunne, because of the inadequacy of the consideration, fraud, and undue influence used in obtaining the same. The District Court entered a decree in accordance with the prayer of the petition, and defendants appeal.

*Pollock & Shields* and *Griffith & Knight*, for appellants.

*H. B. Fouke*, for appellee.

SEEVERS, J.—There is presented on this appeal a question of fact only. Richard Hennessey, plaintiff's father, died in 1863, when the plaintiff was about fourteen years old. At the time of his death said Richard was the owner of the real estate in controversy, and some personal property. The plaintiff was his only child and inherited two-thirds of said property, and the residue became the property of her step-mother, Hennessey's second wife. His estate was somewhat in debt, and the widow administered thereon.

When the plaintiff was about two years old her father married the defendant, Ellen Hennessey. She, at the time, had six children, four of whom, including the defendant, Edward,

made their home with the plaintiff, at her father's, until they married, died, or became of age. The family thus constituted grew up together, as brothers and sisters. The relations existing between these children and their parents were of the most cordial character. The evidence affirmatively shows that there was no trouble or difficulty of any character between them, and this state of things continued after the death of plaintiff's father and until her marriage; at least there is nothing shown to the contrary.

The defendant, Edward, is about nine years older than the plaintiff, and had attained his majority at the time of Mr. Hennessey's death, but he worked on the farm after that period, without, however, there being any agreement as to his compensation. When Mr. Hennessey died the defendant, Edward, at his mother's request, came to the farm, made his home there and took charge thereof. At his step-father's death Edward was absent, but whether merely temporarily or he expected to remain away permanently, does not appear. About four years after Mr. Hennessey's death the plaintiff, in consideration of one thousand dollars, to be paid her in five years, with interest, conveyed her interest in said real estate to the defendant, Edward, she being at the time about twenty years old.

The plaintiff testifies that she did not know, at the time, the amount of the property or the value of her interest. We are inclined to believe this statement because Mrs. Hennessey, who would be much more likely to know the extent of her interest, and consequently that of the plaintiff, testifies that she did know that plaintiff "was the legal owner, as the child of Mr. Hennessey, of two-thirds of the farm and timber." The premises conveyed were worth, at the time it was made, at least $3,500. Mrs. Hennessey's interest was one-third, or $1,166.67. The plaintiff's interest, therefore, was worth $2,333.33, for which the defendant agreed to give her $1,000 in five years, with six per cent interest. The defendant testifies there was a further consideration, consisting of his agreement to pay the plaintiff sooner if she desired the money, and that she was to have her home on the farm with the family.

We, however, think there was no legal obligation resting on the defendant in these respects which could have been enforced.

The indebtedness of the estate was paid by the defendant, Edward, from the rents and profits and the personal property belonging to the estate. He also applied the proceeds of certain property belonging to him to this purpose. But there never was a settlement between him and the estate, nor is the state and condition of the accounts shown. As a matter of fact, we apprehend, no accounts were kept. The family, one and all, so far as we can see, did the best they could, and worked and acted together, for a time at least, with no thought as to any future settlement or adjustment, upon any different basis of the relations financial or otherwise then existing.

A short time before the conveyance was made the defendant, Edward, and his mother, seem to have concluded that the plaintiff had better, and should sell to said Edward her interest in the farm. The defendant, Ellen, plaintiff's step mother, seems to have first broached it to her, and represented the plaintiff's interest was not worth more than $600 or $800.

Edward Dunne states the purchase and sale to have taken place as follows: "I asked her, at home in our house, if she would be satisfied to take $1000 for her interest, payable in five years, bearing six per cent interest. I also told her that in case she needed the money before that time I would get it for her. I also said if she was not satisfied with that, we could call two or three disinterested men, and that I would be willing to leave it to their decision what my share ought to be, for wages during the time I worked there, or whatever other way they might settle it. She told me there was no need, that she knew I was doing right; I told her she might make her home with us as long as she wanted, the same as always." Without anything more being said the conveyance was made in from four to six weeks afterward, the defendant at the same time executing a mortgage to secure the purchase money. The plaintiff testifies that in the whole transaction she relied entirely on the defendant to do what was right. This can be readily believed from what the defendant

Davis v. Dunne.

himself testifies to. The plaintiff never filed the mortgage for record, but the defendant did so without any request from her.

At the same time, and as a part of the same transaction, the defendant, Ellen Hennessey, conveyed her interest in the premises to her son Edward, without receiving any pecuniary consideration therefor.

We are unable to say there was any fraudulent representation made by the defendant. But we are of the opinion that, owing to the relations existing between these parties, the kind and intimate relations of brother and sister, the influence engendered thereby and that must have existed; the fact, apparent from the testimony, that, while the plaintiff in fact assented to the sale and made the conveyance, yet she did not act understandingly and upon any independent exercise of her judgment and will; the fact that she did not know of the extent or value of her interest; the fact that the defendant put forth or insisted that he had a claim or demand against her, which had no legal foundation; the inadequacy of the consideration; all of which the defendant must have known to be inducements to the plaintiff to make the conveyance, the ruling of the District Court setting aside the conveyance should be affirmed.

After the conveyance, and previous to the commencement of this action, the defendant paid the plaintiff two years interest on the amount agreed to be paid, and this the court permitted her to retain, but gave the defendant all the rents and profits of the farm foi the same period. Under the circumstances, this action of the court was exceedingly liberal to the defendant.

AFFIRMED.