ADA H. NEWIS *et al.*, Appellants, v. CHRISTIAN TOPFER *et al.*, Appellees.

Trusts: WHEN MAY BE SHOWN BY PAROL. Where one, with full
1    knowledge of the transaction, places the title to real property in another, and fails to reserve, by a contemporaneous writing, a beneficial interest therein, he cannot afterward show by parol that a trust was in fact intended; but where fraud or

VOL. 121 IOWA.—

deception enters into the transaction, a constructive trust arises, and equity will enforce a parol agreement for the protection of the innocent party. The facts in this case are held to create a trust.

Trusts: FRAUD: CONFIDENTIAL RELATION. Where a grantor, in a
2  helpless condition both mentally and physicially, and confiding in the grantee and others, conveys her property by an absolute deed to her stepfather, expecting to secure a maintence for her children after her death, a constructive trust is created through the confidential relation existing, though no fraud was intended in procuring the conveyance.

Trusts: LIMITATION OF ACTION TO ENFORCE. Where property is con-
3  veyed impressed with a trust, the position of the parties is the same as though the trust were expressed in the deed and the statute of limitations will not commence to run against an action to establish the trust on the ground of fraud, until the trustee disclaims the relation.

Trust Property: LIEN OF BENEFICIARY. Where it appears that
4  specific property has been purchased by a trustee with trust funds, the beneficiary may have a lien established thereon, in a suit to enforce the trust.

*Appeal from Polk District Court.*—HON. C. P. HOLMES, Judge.

TUESDAY, OCTOBER 20, 1903.

THIS is an action in equity to have a deed of conveyance absolute in form declared to be a deed of trust, and for general relief. The defendants answered, denying the trust alleged, pleading the statute of limitations, and presenting a counterclaim upon which judgment is demanded in the event the trust relation alleged shall be found to exist and it is further found that the plaintiff's action is not barred by the statute. The facts, as far as necessary to be considered, will be found stated in the opinion. There was a trial to the court, resulting in a decree in favor of the defendants dismissing the petition, and rendering judgment against plaintiffs for costs. The plaintiffs appeal. —*Reversed.*

*J. C. Hume* for appellants.

*E. T. Morris* for appellees.

BISHOP, C. J.—It appears that on October 11, 1887, Wilhelmina Heine, a widow, was the owner in fee of a house and lot in the city of Des Moines, which is described in the petition, and the same then was, and for several years had been, occupied by herself and family as a home. On the date mentioned she signed a deed of conveyance of the same to the defendant Christain Topfer, who was her stepfather. The instrument signed purported to be an absolute conveyance and deed of general warranty. The consideration named therein is love and affection and the sum of $1 in hand paid. Mrs. Heine continued to occupy the property with her family until her death, which occurred October 18, 1887. She left surviving her four children, all minors, viz., Lena, born February, 1870; Ada, now Ada H. Newis, born October, 1872; Marie, born August, 1877; and William, born October, 1879. Lena, the eldest, died in September, 1888, unmarried. Mrs. Heine was the daughter by a former marriage, and only child of the defendant Gotlebe Topfer, now and at the time in question the wife of defendant Christian Topfer. After the death of their mother, the plaintiffs and their sister Lena were taken to the home of defendants, where they remained for the time being. In May, 1888, the defendants sold and conveyed the Heine property to one Harris, receiving therefor the sum of $750, which sum it appears was the reasonable value of the property at the time of such sale. Without entering upon a discussion of any of the controverted points of evidence, we find the facts bearing upon the execution of the deed in question to be, in substance, these: The illness which terminated in the death of Mrs. Heine had continued over a period of several years. She had gradually declined, until but a

shadow of her former self remained, and for several
months before her death had been bedfast. It appears
that the Reverend Kleinlein, minister in charge of the
church to which she belonged, was a frequent visitor at
her house, and towards the last the defendants, one or
both, were there most of the time. Some three or four
weeks before the death of Mrs. Heine, it then having be-
come apparent that the end was not far off, Kleinlein
brought up the subject-matter of the disposition of the
children and of the property. As far as shown by the
record, he is the only person who talked directly with Mrs.
Heine relative to the matter, although the defendants
were present during some of the conversations. Mrs.
Heine had grown to be very deaf, and either unable or
disinclined to talk, so that she responded to what was said
to her only by shaking or nodding her head. It appears
without dispute that Kleinlein, in presenting the matter
to her, said, in substance, that she ought to execute a
will, and thus put her property in such shape that the
children might have the benefit thereof. To this she re-
sponded simply by a nod. The record is barren of any
evidence tending to prove that the subject of making a
deed of the property, absolute in terms, to the defendants,
was ever suggested to the dying woman, although the
propriety of defendants taking and caring for the children
was discussed in her presence. From our reading, the
conclusion seems to be irresistible that Kleinlein under
took to settle all matters involving the children and the
property according to his own notions. He demanded of
the defendants that they take the children, to which they
demurred at first, but finally consented when assured by
Kleinlein that the property would be placed in their hands.
About a week before the death of Mrs. Heine, Kleinlein
and Christian Topfer visited a lawyer, and the subject of
the disposition of the property was talked over. The law-
yer advised the execution of a will, but this was objected

to because thereunder the property could not be made available, and a similar objection was made to a trust deed. It was finally decided that an unconditional conveyance should be made to Topfer, in consideration of which he should take the children and care for and educate them. Accordingly, a simple deed was prepared, and the parties then repaired to the residence of Mrs. Heine. The condition of the latter at this time is described by her attending physician. He says that she was hopelessly ill, and only partially in possession of her physical senses; that when he saw her last, which was within a day or two, she had passed into a semi-comatose condition, and did not seem to recognize and comprehend her own condition or the surroundings. He also says that she was neither physically nor mentally able to attend to any business affair, nor to understand the nature and effect of any contract she might make. Other witnesses also testify to her helpless and hopeless condition, and this does not seem to be the subject of any serious question, although some of the witnesses say that she would occasionally rally and appear to be conscious of what was going on about her. Upon arriving at the house, Kleinlein, without making any explanations, and without reading the document to her, as far as appears, told Mrs. Heine that he wanted her to sign the instrument they had brought, and that it was all right. She was raised up, and he put a pen in her hand, and then with his own hand guided hers, whereby her name was traced upon the face of the deed. Thereafter the deed was delivered to Christian Topfer. Now, in his testimony, Topfer does not claim that he ever conversed with Mrs. Heine upon the subject of a conveyance of the property to him. By way of a conclusion he says that Mrs. Heine and the minister promised him the property if he would care for the children. When such conversation occurred, what was said and who said it does not appear. Taken in connection with the rest of his testimony, we think it

more than probable that the statement came from Klein-
lein alone. Kleinlein was not a witness upon the trial,
and all the other witnesses who overheard his conversa-
tions with Mrs. Heine agree that there was mentioned
only the execution of a will for the benefit of the children.

Without doubt, if it were to be said that the deed to
Christian Topfer was understandingly and voluntarily
made, and that the agreement on his part was one simply
to take the children of his stepdaughter and
care for and educate them, and upon their
majority to deed the property to them, or turn
over to them the proceeds thereof, if sold, an express trust
would be made out. Counsel for appellees does not dis-
pute this, but it is said that under our statute such ex-
press trust could be proven only by some writing wherein
the trust was declared. Section 2918 of the Code, provid-
ing that "declarations of trust or powers in relation to
real estate must be executed in the same manner as deeds
of conveyance," is relied upon to support the contention.
That the statute is to be given application to all cases
coming within the scope thereof cannot be questioned.
But such statute was intended to apply where parties are
wholly capable of contracting, and do so contract with full
understanding and knowledge, if not at arm's length.
And the avowed purpose is to prevent frauds. The
thought of the statute, expressed in homely language, is
that, if one shall choose to place title to realty in the
name of another, and shall not by the same or some con-
temporaneous instrument in writing reserve to himself or
for the benefit of some other person any interest therein,
public policy requires that he shall not be heard after-
wards to assert that in point of fact the creation of a trust
was thereby intended. But for such rule, the security of
land titles, a subject of much public as well as private
importance, and as well other interests which the law
deems of sufficient importance to safeguard would become

1. TRUSTS: when may be shown by parol.

greatly jeopardized. So it is that the mere breach of an express promise, or a refusal on the part of an alleged trustee to execute the trust reposed in him, however reprehensible his conduct from a moral standpoint may be, will not be sufficient to remove the bar of the statute and allow a trust in realty to be proven by parol. *Burden v. Sheridan*, 36 Iowa, 125; *McClain v. McClain*, 57 Iowa, 167; *Acker v. Priest*, 92 Iowa, 610. But, as we have said, the rule was designed to prevent, and not to furnish a cover for, frauds. In connection with the rule, and, indeed, as a part of it, the same section of the statute declares, "But this provision does not apply to trusts resulting from the operation or construction of law." When, therefore, it is made to appear that fraud has entered into a transaction or agreement, whereby title to realty is procured to pass out from the owner, the rule has no application. In such a case, it being made to appear that an innocent party has been led by fraudulent practice or deception into parting with the title to his property, a constructive trust arises, and, notwithstanding the general rule, a court of equity will grant relief to the extent of enforcing a parol contract entered into at the time, and may otherwise by its decree protect and enforce the rights of the innocent party.

In the application of the rule the distinction to be drawn is between those cases where fraud inheres in the very contract under and pursuant to which the conveyance in question was made and those cases which involve simply the moral fraud or wrong incident to the repudiation of such portion of a contract theretofore fairly entered into as rested in parol. In the former class of cases the fraud may be proven, and, being established, the constructive trust which arises therefrom may be said to be independent of any express agreement of trust, if such is claimed or appears, although an express agreement, being proven, may be resorted to for the purpose of defining or

ascertaining the nature and character of the trust. If the law were otherwise, then it would be that its provisions could be made to serve as a shield to prevent the discovery and punishment of a fraud in fact committed. As illustrative of the point, we quote from the opinion in *Burden v. Sheridan, supra:* "So where one agreement in writing is proposed and drawn, and another is fraudulently and secretly brought in and executed in lieu of the former. In this and like cases where there has been some trick or artifice or misrepresentation by which a party has been induced to enter into an agreement or part with some right, and would sustain injury if the other party is allowed to repudiate the agreement, courts of equity have granted relief to the party injured." The principal involved is not unlike that which obtains in a case where a devisee or legatee has induced a testator to make a devise or bequest to him by verbal promise to hold the property or an interest therein for the benefit of a third person. It is said that the breach of such promise is a fraud such as will operate to convert the devisee into a constructive trustee. 15 Am. & Eng. Ency. of Law (2d Ed.) 1191; *Moran v. Moran,* 104 Iowa, 216. In the second class of cases to which we have referred, the parties having understandingly chosen the form in which their contract shall be evidenced, the law, for satisfactory reasons, will not permit them to assert in parol that the conveyance made was in fact subject to a trust imposed, and this notwithstanding it is alleged that bad faith now dominates the conduct of the grantee.

Now, in the case before us it is the contention of appellants—and without difficulty we are able to agree therein—that a fraud was committed upon Mrs. Heine. We need not and we do not go so far as to say that a fraud was actually intended. On the contrary, we may concede for the purposes of the case that the appellant Christian Topfer and the minister, Kleinlein, were actuated by

worthy motives; nevertheless what was done amounted to
a legal fraud, if the instrument executed is to be given
full force according to its terms.   If it were to be said that
in point of fact Mrs. Heine was *non compos* at the time—
and this is contended for by counsel for appellants—then
all question as to the character of the holding by Topfer
would instantly disappear as a matter of course.   We
would then have a case of no deed, and the appropriation
of the property by him would give rise at once to a con-
structive trust.   Granting, however, that Mrs. Heine had
not as yet parted with all her mental powers, still we are
satisfied that she was led to believe that a will only was to
be executed by her, and that such would provide for a devise
of the property to, or in trust for the benefit of, her child-
ren.   There is no ground upon which to plant the asser-
tion that it was within her understanding and intention
that she was entering into a contract for the support and
maintenance of her children, and paying therefor in ad-
vance by an absolute and unconditional conveyance of all
the property she possessed; and that she did not know, as
a matter of fact, what was the character of the instrument
she signed, we think is clearly established by the evidence.
Taking the circumstances of the case to be as we find them,
and it follows as a necessary conclusion that Topfer is in
no position to claim that the conveyance to him was vol-
untarily and understandingly made, or that he obtained
and took title to the property in good faith.   He became
chargeable, therefore, as a trustee for Mrs. Heine, and
upon her death as a trustee for her legal heirs.

There is another principle of law which has applica-
tion to the facts here presented, as we think, and upon
which the conclusion we have reached can be justified.
The defendant sustained a relation parental in character

s.  TRUSTS:
    fraud: confi-
    dental re-
    lation.

toward Mrs. Heine.   He accepted the con-
veyance from her knowing that it was no
part of her intention to bestow a gift or

confer a benefit upon him. Within his knowledge it
was the extent of her understanding that in some way
the property was being made over to or for the sole
benefit of her children. In her weak and helpless con-
dition she confided in her minister and her stepfather to
so provide that her desire might be fulfilled. Accordingly
it is to be said that a confidential relation existed between
the parties, and in such a case, even though there be no
fraud on the part of a grantee in procuring a conveyance
to be made to him, still equity will decree the existence
of a constructive trust, and enforce the same according to
the understanding of the grantor as far as such can be
ascertained. As supporting this principle, see *Davis v.
Dunne,* 46 Iowa, 684; *Goldsmith v. Goldsmith,* 145 N. Y.
313, (39 N. E. Rep. 1067); *Brison v. Brison,* 75 Cal. 525 (17
Pac. 689, 7 Am. St. Rep. 189); *Broder v. Conklin,* 77 Cal.
330 (19 Pac. Rep. 513; *Gruhn v. Richardson,* 128 Ill. 178
(21 N. E. Rep. 18).

II.    Having reached the conclusion that the accept-
ance of the deed to the property in question on the part of
Christian Topfer had the effect to create a constructive

3.  TRUSTS:
    limitation
    of action to
    enforce.

trust, we next proceed to consider whether
the right to declare upon and enforce such
trust has been lost by reason of the running
of the statute of limitation. It is the contention of coun-
sel for appellees that plaintiff's action, being grounded on
fraud, comes within the provisions of subdivision 6 of
section 3447 of the Code, which requires all actions
brought for relief on the ground of fraud to be commenced
within five years. And it is said that the statute commenced
to run from the instant the deception complained of was
practiced on Mrs. Heine, or, at best, from the time knowl-
edge of such deception was imparted, which was accom-
plished by the recording of the deed occurring on the day
the same was executed. It is also said that the operation
of the statute was not suspended by the death of Mrs.

Heine, but continued to run as against her heirs and rep-
resentatives.　With this conclusion, arrived at by counsel,
we cannot agree.　The title to the property having been
taken by Topfer impressed with a trust, and the terms
thereof being ascertained, it follows that from the begin-
ning his relation to the property and to the *cestui que trust*
must be regarded precisely as though the terms of the trust
had been declared in the deed itself.　We think that it
fairly appears from the evidence that from the rents of
the property, or from the proceeds thereof, if necessary,
the defendant was to maintain and educate the children
of Mrs. Heine; that, when all the children had arrived at
the age of majority, the balance remaining,. if any there
were, should then be distributed among them.　Nothing
was said or done by Christian Topfer indicating an inten-
tion to repudiate the trust until shortly before the com-
mencement of this action, and, in any event, five years
has not elapsed since said children became of age.　It fol-
lows that the statute of limitations has not run, and the
plea thereof is without force.　As illustrative of the prin-
ciple involved, see the following cases: *Otto v. Schlapkahl*
57 Iowa, 226; *Gebhard v. Sattler*, 40 Iowa, 152; *Murphy
v. Murphy*, 80 Iowa, 740; *Long v. Valleau*, 87 Iowa, 675.

III.　We now inquire into the merits of the counter-
claim pleaded by defendants.　There are items amounting
to $73.25 paid out in connection with the property in ques-
tion, and, without entering upon a discussion of the items,
or the evidence relating thereto, we think the same should
be allowed.　So, too, we think an item of $25 for funeral
expenses of Lena should be allowed.　The remaining
items of the claim are for board, schooling, clothing, etc.,
of the children, and these should not be allowed.　It ap-
pears that, when taken to the home of defendants, the
children lived in a room by themselves; that they cared
for themselves principally, doing their own cooking, wash-
ing, etc.　The girls soon went out to work, and from their

earnings they provided food and clothing for themselves
and the younger children.    True, defendants contributed
to some extent to the support of the younger children, but
it seems that as soon as they were old enough they went
out to work, and their earnings were appropriated by de-
fendants.    On the whole, and after a careful reading of
the record, we think that what was received by defend-
ants in the way of service and earnings, together with the
use of the money derived from the sale of the property in
controversy, was sufficient to fully compensate defendants
for all expense incurred by them.    Accordingly we find
that from the sum of $750 in the hands of defendant
Christian Topfer there should be deducted the sum of
$98.25, and plaintiffs are entitled to judgment in the sum
of $651.75, with interest from the date of the decree to be
entered, at the rate of six per cent. per annum.    It is
made to appear that of the moneys so received by him the
said Christian Topfer invested the sum of $300 in lot 14,
block 1, In White's addition to Fort Des Moines, which
property said defendant still owns.    Plaintiffs having
traced so much of the trust fund to said property, the
same may be established by the decree to be a lien
thereon, with an order for sale under special execution to
satisfy the same.    For the remainder of the judgment
ordered plaintiffs may have general execution.

Upon the trial in the court below plaintiffs expressly
consented that the decree, if one were ordered in their
favor, should provide that the lien upon the property des-
cribed in the purchase and improvement of which the
trust fund was used should be decreed to be subject to the
right on the part of defendants to use and occupy the prop-
erty during the remainder of their lives.    A similar consent
is here expressed.    The decree entered will so provide.

The judgment entered by the court below is reversed,
and a decree in favor of plaintiffs in harmony with this

opinion is ordered.    The cause will be remanded for that purpose, or plaintiffs may have decree entered in this court, at their election.—REVERSED.