MAGGIE HEDDLESTON ET AL., Appellants, v. JOHN STONER ET AL., Appellees.

**Presumption of tenancy.** Mere possession of the land of another raises a presumption of tenancy unless there is evidence to the contrary.

**Sale of land:** PAROL CONTRACT: WHEN MAY BE SHOWN. Although a parol contract for the sale of land when followed by possession may be proven, the evidence in the instant case is held insufficient to establish the claimed contract.

**Trusts:** PROOF OF SAME. An express trust in land, existing in parol, cannot be established where fraud of the grantee is not shown; nor will the breach of a trust to hold title for another amount to a fraud for which equity will declare a constructive trust.

**Parol land contract:** POSSESSION: SURRENDER OF RIGHTS: EVIDENCE. The evidence in an action to establish an interest in real estate based upon a parol contract followed by possession, is reviewed and held to preclude plaintiff from asserting any interest therein.

*Appeal from Iowa District Court.*— HON. O. A. BYINGTON, Judge.

TUESDAY, OCTOBER 17, 1905.

ACTION in equity for an accounting, etc. The opinion states the case. The trial resulted in a decree for defendants, and plaintiffs appeal.— *Affirmed.*

*Dutcher & Davis* and *Milton Remley,* for appellants.

*A. E. Swisher* and *M. J. Wade,* for appellees.

BISHOP, J.— The plaintiffs are Maggie Heddleston and her children by her first husband, Cyrus Stoner. The principal defendant, John Stoner, was the father of said Cyrus. The marriage of Cyrus and Maggie took place in 1877, and

at the time the former was 21 and the latter 19 years of age. Soon after the marriage they went to live on the farm involved in this controversy, theretofore owned and the title to which was in said John Stoner, and so continued in possession down to January, 1896, when Cyrus died. It is conceded that no writing was entered into, but it is the allegation of plaintiffs that possession was so taken under and by virtue of a contract of sale between Cyrus and his father. Before his death, and in January, 1896, Cyrus, his wife Maggie joining, executed and delivered to his father, said John Stoner, a quitclaim deed of the farm. It is the substance of the allegation that this deed was procured by fraud and without consideration; that defendant John Stoner by further fraud has obtained possession of the farm, and has since sold the same to his codefendants. Wherefore the accounting is asked.

One who goes into possession simply of the real estate of another is presumed to be a tenant, in the absence of any proof to rebut such presumption. The proof sought to be

1. PRESUMP-
TION OF
TENANCY.

adduced to establish the contract of sale here alleged is payments made to apply on the purchase price; and admissions claimed to have been made by defendant to the effect that a sale had been made by him to his son. As in the nature of these latter, counsel for appellant also rely upon the circumstance of the taking of the quitclaim deed.

Upon authority of *Chamberlin v. Robertson*, 31 Iowa, 408, and other like cases, counsel insist that a parol contract for the purchase of lands may be proven where payment is

2. SALE OF LAND:
private con-
tract; when
may be
shown.

made, or possession is taken thereunder. There will be found no one to dispute the proposition of law thus advanced. But as to the matter of payments, the court below, with the witnesses personally present before it, found that the evidence did not bear out the contention as made. And in the conclusion reached we are disposed to agree. We need not enter upon any detailed

discussion of such evidence. What has just been said is also true in respect of the verbal admissions relied upon as having been made by defendant. Now, without explanation, the taking of the quitclaim deed might well be looked upon as a circumstance indicating that John Stoner at least considered that his son had, or might have, some interest in the property other than such as is usually possessed by a mere tenant. But the court was warranted in finding that during the years of his occupancy Cyrus never asserted title to the property as against his father; that the relations between them never assumed a form higher than that of landlord and tenant. True, Cyrus made some improvements on the place; but, on the other hand, it would seem that the rental charged him was nominal. And, quite readily, it may be inferred that it was within the contemplation of each that at some time the father would present the son with the ownership of the property. Coming down to the making of the deed, it appears that Cyrus had become financially embarrassed, and his creditors were clamoring for the satisfaction of their demands. In this situation the quitclaim deed was executed and delivered. Therefrom it is not unfair to conclude that the parties were apprehensive that an attempt might be made to charge the land with the payment of Cyrus's debts, and that both were agreed that such should not be done.

Be this as it may, however, no fraud or misrepresentation is shown on the part of the father, and especially in the absence of such an express trust in real estate existing in

3. EXPRESS TRUST: proof of same. parol cannot be established. Code, section 2918; *Richardson v. Haney,* 76 Iowa, 101; *Newis v. Topfer,* 121 Iowa, 433. And the breach of an express trust to hold title for another will not of itself constitute fraud on which a court of equity will build up a constructive trust. *Andrew v. Andrew,* 114 Iowa, 524.

But, aside from all this, we think Mrs. Heddleston is in no position to insist upon her present matter of contention. After the death of her husband she continued to live on the

farm. In April, 1897, she entered into a lease in writing
with John Stoner, whereby the latter leased to
her the premises for one year; the provision as
to rent being as follows: " Second party to
have all the lands will produce in the year 1897 to maintain
herself and family, except so much as will pay for the promis-
sory note held by the first party as a lien on said crop of
1897." In January, 1898 — the said Maggie, having in the
meantime married David Heddleston — the said John Stoner
served notice in writing upon them of his demand for pos-
session on March 1st, according to the terms of the lease.

*4. PAROL LAND CONTRACT: possession: surrender of rights: evidence.*

It appears that on February 7th, following, an arrange-
ment was entered into under which John Stoner executed
and delivered an instrument conveying to Maggie Heddles-
ton a life estate in certain other real estate, and with remain-
der over to her children. As part of the arrangement, Stoner
executed and delivered a further writing in which the real
estate conveyed is valued at $1,162, and it is then recited
that he (Stoner) agrees to pay to said Maggie the sum of
$338; of such amount $38 to be paid at once, and $300 " at
such time as she may desire to invest the same in other real
estate." While the subject of some controversy, we think it
fairly appears also that Maggie and her husband executed
an agreement on their part, in substance that their tenancy
and right of possession of the farm in question should termi-
nate absolutely on March 1, 1898, when they would vacate
without further notice. They did vacate on that date, and
went to live on the lands so conveyed to Maggie by defendant.
On April 16, 1902, there was indorsed on the writing, exe-
cuted by Stoner as above stated on February 7, 1898, an
acknowledgment of the full sum of money in said writing
agreed to be paid, and reciting that the said payment was
" in full of any and all sums of money and real estate coming
to me from said John Stoner or his estate," signed by
" Maggie Heddleston." It is charged that fraud also entered
into these transactions; at least, that they were fraudulently

brought about by John Stoner to enable him the better to maintain his claim to title to the farm. But the allegation lacks for proof.

The court below dismissed the petition, and gave decree quieting title in the defendants. The decree has our approval, and it is *affirmed.*