[No. 12493. In Bank. — November 12, 1888.]

R. C. BRODER ET AL., APPELLANTS, v. A. R. CONKLIN ET AL., RESPONDENTS.

STATUTE OF FRAUDS — PLEADING DEFENSE OF. — It seems that a defendant relying upon the defense of the statute of frauds must plead it.

ID. — COMPLAINT NEED NOT ALLEGE THAT AGREEMENT WAS IN WRITING — DEMURRER. — A complaint on an agreement required by the statute of frauds to be in writing need not allege that it was in writing; and where the complaint is silent as to the form of the agreement, it will be presumed, on demurrer, to have been in writing.

ID. — ATTORNEY AND CLIENT — INSOLVENCY — PURCHASE BY ATTORNEY UNDER AGREEMENT WITH CLIENT — CONSTRUCTIVE TRUST. — An attorney at law who represents all the parties in an insolvency proceeding occupies a confidential relation as to them; and if he buys in the property of the insolvent at the assignee's sale, in pursuance of a parol agreement between himself and his clients that he should do so for the benefit of and in trust for the creditors, and should hold the same as their

trustee until such time as the property could be sold more advantageously at private sale, he becomes a constructive trustee for them of the property so bought, whether the same be realty or personalty. Such an agreement is not within the statute of frauds, and the fact that it was not in writing is no defense to an action to enforce the trust.

ID. — PAYMENT OF CONSIDERATION — RESULTING TRUST. — If the consideration for the purchase was paid by the creditors, a resulting trust is created in their favor, under section 853 of the Civil Code.

ID. — ATTORNEY ESTOPPED TO DENY TRUST. — The fact that there was a defect in the insolvency proceedings, occurring under the direction of the attorney and invalidating the deed of the assignee, cannot be taken advantage of by him to defeat the trust.

ID. — STATUTE OF LIMITATIONS. — REPUDIATION OF TRUST. — The statute of limitations does not commence to run against the right of the creditors to enforce the trust, while the attorney remains in possession of the property, and before he repudiates the trust.

ID. — PROPER PARTIES TO ACTION. — In an action to enforce the trust, the insolvent, his creditors and their successors in interest, are proper parties plaintiff; and the trustee, and subsequent purchasers and encumbrancers under him, are proper parties defendant.

APPEAL from a judgment of the Superior Court of Inyo County.

The facts are stated in the opinion of the court.

*Richard S. Miner, Langhorne & Miller, Eugene R. Garber,* and *J. W. P. Laird,* for Appellants.

The complaint states facts sufficient to constitute a cause of action, and no clearer case of trust and of breach of trust could be presented. (Pomeroy's Eq. Jur., sec. 1055; *De Mallagh* v. *De Mallagh, ante,* p. 126; *O'Connor* v. *Irvine,* 74 Cal. 435; *Sandfoss* v. *Jones,* 35 Cal. 481; *Millard* v. *Hathaway,* 27 Cal. 119; *Bayles* v. *Baxter,* 22 Cal. 575; *Estate of Hinckley,* 58 Cal. 483; *Everdson* v. *Mayhew,* 65 Cal. 163; *Tracy* v. *Colby,* 55 Cal. 67; *Greiner* v. *Greiner,* 58 Cal. 115; *Hollinshead* v. *Simms,* 51 Cal. 158; *De Celis* v. *Porter,* 59 Cal. 464; *Wilson* v. *Castro,* 31 Cal. 420; *Salmon* v. *Symonds,* 30 Cal. 301; *Bludworth* v. *Lake,* 33 Cal. 256; *Lakin* v. *Sierra B. M. Co.,* 11 Saw. 231; *Hardy* v. *Harbin,* 4 Saw. 549; *Hunt* v. *Roberts,* 40 Me. 187; *Wheeler* v. *Reynolds,* 66 N. Y. 227;

*Wolford* v. *Harrington*, 86 Pa. St. 39; *Coyote* v. *Rubble*, 8 Or. 284; Civ. Code, subd. 3, secs. 852, 2217, 2223, 2224.) As between attorney and client, the parties do not deal at arms' length; their relations are held to be especially confidential, and the acquirement of the legal title by an attorney to his client's property is presumptively in trust for his client. (Pomeroy's Eq. Jur., sec. 1052; *Kisling* v. *Shaw*, 33 Cal. 425; 91 Am. Dec. 644; *Valentine* v. *Stewart*, 15 Cal. 387; *Manning* v. *Hayden*, 5 Saw. 360; *Dunn* v. *Record*, 63 Me. 17; *Polson* v. *Young*, 37 Iowa, 196; *Ryan* v. *Ashton*, 42 Iowa, 365; *Bowers* v. *Virden*, 56 Miss. 595; *Warren* v. *Hawkins*, 49 Mo. 137; *Banks* v. *Judah*, 8 Conn. 145; *Reed* v. *Warnen*, 5 Paige, 650.) The cause of action is not barred by any of the provisions of the statute of limitations. Until there was a repudiation of the trust, the statute did not commence to run. (*Schlessinger* v. *Mallard*, 70 Cal. 326; *Gilbert* v. *Sleeper*, 71 Cal. 294; *Hearst* v. *Pujol*, 44 Cal. 231; *Miles* v. *Thorn*, 38 Cal. 335; 99 Am. Dec. 384; *Lakin* v. *Sierra B. M. Co.*, 11 Saw. 231; *Currey* v. *Allen*, 34 Cal. 254; *Altschul* v. *Doyle*, 55 Cal. 633; *Bohm* v. *Bohm*, 9 Col. 100; *Ger. Am. Sem.* v. *Kiefer*, 43 Mich. 105; *Buckner* v. *Calcote*, 28 Miss. 432; *Gebhard* v. *Sattler*, 40 Iowa, 152; *Smith* v. *Davidson*, 40 Mich. 632; *McAlpine* v. *Hedges*, 21 Fed. Rep. 689.) There is no misjoinder of parties plaintiff or defendant. (Code Civ. Proc., secs. 378, 379, 382; Story's Eq. Pl., secs. 72, 74; *Pfister* v. *Dascey*, 65 Cal. 403; *Jenkins* v. *Frink*, 30 Cal. 586; 89 Am. Dec. 134; *McPherson* v. *Parker*, 20 Cal. 455; 89 Am. Dec. 129; *Owen* v. *Frink*, 24 Cal. 177; *Logan* v. *Hale*, 42 Cal. 645.)

*P. Reddy*, and *W. H. Metson*, for Respondents.

The allegations respecting the trust clearly imply that the agreement was oral, and this fact appearing upon the face of the bill, it may be taken advantage of by demurrer. (*Walker* v. *Locke*, 5 Cush. 90; *Slack* v. *Black*, 109 Mass. 496; *Ahrend* v. *Odiorne*, 118 Mass. 261; *Camp-*

*bell* v. *Brown,* 129 Mass. 23; 1 Daniell's Chancery Practice, 5th Eng. ed., 480, note; *Randall* v. *Howard,* 2 Black, 585; *Farnham* v. *Clements,* 51 Me. 428.) The action was barred by the statute of limitations, as the denial of the trust and the assertion of an adverse claim puts an end to the trust, and from the time notice thereof, actual or constructive, is given to the beneficiary, the statute commences to run. (*Robson* v. *Jones,* 27 Ga. 266; *Keaton* v. *McGwier,* 24 Ga. 217; *Murdock* v. *Hughes,* 15 Miss. 219; *Smith* v. *Ricords,* 52 Mo. 581; *White* v. *Leavitt,* 20 Tex. 753; *Andrews* v. *Smithwick,* 20 Tex. 111; *Lucas* v. *Daniels,* 34 Ala. 188; *Fox* v. *Cash,* 11 Pa. St. 207; *Roberts* v. *Berdell,* 61 Barb. 37; Perry on Trusts, sec. 864, and cases cited; *Janes* v. *Throckmorton,* 57 Cal. 388; *Hearst* v. *Pujol,* 44 Cal. 235.)

McFARLAND, J.—This is an action brought by John Broder and certain of his creditors and their successors in interest to have a trust established and declared against the defendant, A. R. Conklin, as to certain real and personal property, and for an accounting, etc. Other parties are made defendants, as claiming an interest in the said property, etc. The defendants, A. R. Conklin and his wife, Mollie Conklin, demurred to the second amended complaint upon the grounds that it did not state facts sufficient to constitute a cause of action; that the alleged cause of action was barred by several sections of the Code of Civil Procedure, providing for the time within which actions must be commenced; and that there was a misjoinder of parties, both plaintiff and defendant. The demurrer was sustained by the court below, and judgment entered for defendants. Plaintiffs appeal from the judgment. The complaint is necessarily quite lengthy, but the main facts averred which it is necessary to state here, and which for the purposes of the demurrer must be taken as true, are substantially these:—

On March 24, 1879, the plaintiff, John Broder, filed his petition in insolvency in the county court of Inyo County. On May 1, 1879, William A. Greenly, one of the creditors, was appointed assignee. He qualified and entered upon the discharge of his duties, and on May 6, 1879, took possession of all the said insolvent's estate. On May 13th the court made an order that said assignee sell all the property, real and personal, of the insolvent at public auction, and apply the proceeds to the payment of the claims of the creditors. When the proceedings were at this stage, the defendant A. R. Conklin represented to the insolvent and his creditors that if the property should be sold at auction it would not realize enough to satisfy the creditors, and would be sold at a sacrifice; and that if they would refrain from bidding and allow him (Conklin) to bid the same in for a nominal sum, he would do so for the benefit of and in trust for said creditors, and would hold and manage it as their tru until it could be sold advantageously at private Thereupon a mutual agreement to that effect was e tered into between Conklin and the insolvent and his creditors, and that after the sale said "defendant, A. R. Conklin, should and would hold and manage said property in trust for them until such time as it could be sold at private sale, or disposed of to better advantage and for a larger sum, and that all the rents, issues, profits, and proceeds thereof should be applied by said A. R. Conklin to the payment of the several claims of the creditors of said insolvent, and the surplus, if any, should be paid over to said insolvent, John Broder." At the time of this agreement, the said Conklin was an attorney at law; he was also the attorney of said John Broder in his insolvency proceedings; he was also the attorney of said assignee Greenly; and he was also "the confidential and trusted adviser of the other creditors," who "had and reposed great and unlimited confidence in the integrity and good faith of said defendant A. R.

Conklin, and trusted and believed him, and relied upon his agreement and representations and promises aforesaid, and his duty as their attorney and confidential adviser and trustee aforesaid, and allowed him to do and act in the matter as he had advised and counseled."

In pursuance of this agreement, Conklin was allowed to bid in the property, and did so bid it in at the auction on June 9, 1879, at the nominal sum of two thousand five hundred dollars, no part of which was ever paid; and on said day, the said assignee conveyed by deed all the property of said insolvent to said Conklin. The property at that time was of the value of thirty-two thousand dollars, and it has since become much more valuable. The said deed from said assignee was in form absolute, and did not, on its face, declare any trust; but Conklin took it under said agreement, and in trust as aforesaid. He took possession of all the property as such trustee, and acted as such until, at a subsequent time, he repudiated the trust. (Afterward, about January 7, 1880, Conklin represented to the insolvent, John Broder, that the deed from the assignee was defective, and persuaded him to make another deed, and said Broder, upon representations of said Conklin, and for the purpose of carrying out said agreement as aforesaid, did execute and deliver to said Conklin a conveyance of all said property conveyed, or intended to be conveyed, by said deed of said assignee. No consideration was paid by Conklin for this second conveyance.) Between the date of the deed from said assignee and the 10th of March, 1884, he sold the personal property for more than eight thousand dollars, and received as rents, issues, and profits of the real property over ten thousand dollars. He paid creditors' claims to the extent of about four thousand five hundred dollars, and conveyed one piece of land to a creditor who held a mortgage on it in satisfaction of his claim. On the 10th of March, 1884, the said A. R. Conklin, for the first time, repudiated and disavowed

said trust; appropriated all the moneys collected by him
as such trustee to his own use; refused to pay any claims
under said agreement, and claimed in his own right all
the property received by him from said insolvent as
aforesaid. And on said day he conveyed all the real
property so received to his wife, the defendant Mollie
Conklin, who took the same with full notice of all the
facts before stated. Since said May 10, 1884, the defend-
ants, A. R. Conklin and Mollie Conklin, have received
rents, profits, etc., of said property to the amount of about
seven thousand dollars. Plaintiffs did not know, and
had no means of knowing, prior to said May 10, 1884, of
any of said fraudulent acts of defendant. (There are
many other averments of facts which fill up the details
of the alleged transactions between the parties, but the
foregoing statement is full enough to show the sufficiency
or insufficiency of the complaint.)

It does not appear upon what grounds the court below
sustained the demurrer, and we are not able to see why
the complaint is not sufficient.

1. With respect to the point that the agreement upon
which the alleged trust rests was not in writing, it may
be said that this court has held that a defendant, to avail
himself of the statute of frauds, must plead it (*Osborne* v.
*Endicott*, 6 Cal. 154), and if this rule is to be adhered to,
the point cannot be considered on the demurrer. But,
waiving that consideration, it does not appear from the
complaint whether the agreement was verbal or in writ-
ing; and it has been held by this court several times
that in such a case it is not necessary to aver the con-
tract to have been in writing (even when the statute of
frauds requires it), and that "on demurrer we shall con-
sider it to have been made in writing." (*Brennan* v.
*Ford*, 46 Cal. 14; *Miles* v. *Thorne*, 38 Cal. 339; 99 Am.
Dec. 384; *Wakefield* v. *Greenhood*, 29 Cal. 598; *Vassault*
v. *Edwards*, 43 Cal. 458; *McDonald* v. *M. V. H. Associa-*

*tion,* 51 Cal. 210.)    Therefore no question as to the stat-
ute of frauds was raised by the demurrer.

But as the case may possibly be tried on issues raised
by an answer, it is proper to say that, in our opinion, the
facts averred in the complaint, if true, created a trust as
claimed by plaintiff, even though the agreement was not
in writing.    It is difficult to distinguish this case from
*Sandfoss* v. *Jones,* 35 Cal. 481, except that in the latter
case the trustees furnished part of the purchase-money,
while in the case at bar Conklin did not furnish any of
it, and that there was no peculiarly confidential relation,
such as that of attorney and client, between the parties.
In that case, Bartram being the owner of a large amount
of real and personal property, with which he carried on
the lumber and hotel business, and having been attached
by his creditors, made a *verbal* agreement with J. and B.,
by which the latter agreed to take possession in their own
names of all the property, to purchase it at sheriff's sale
for the benefit of Bartram, and to advance their own
money if necessary for that purpose; to conduct the
business, and when they had been repaid out of its pro-
ceeds their own debts and advances, to reconvey to Bar-
tram, etc.    J. and B. entered upon the execution of this
agreement, and in due time all the claims against Bar-
tram, including those of J. and B., were extinguished,
with money chiefly, if not wholly, derived from the
property and business.    Then J. and B. undertook to
repudiate the trust and retain the property as their own.
Thereupon Sandfoss, assignee of Bartram, commenced
an action very similar to the case at bar, and the lower
court, as in the case at bar, sustained a demurrer to the
complaint.    But on appeal this court reversed the judg-
ment.    Sanderson, J., in delivering the opinion of the
court, says: "Whether they [J. and B.] paid for the real
estate wholly or in part with Bartram's money, or their
own exclusively, is immaterial.    In either event their

agreement was not within the statute of frauds, and was not therefore void because it was not in writing. If the real estate was paid for by Jones and Blanchard with the money of Bartram, there was a resulting trust in favor of the latter which a court of equity will declare and enforce, for such a trust is expressly excepted from the operation of the statute of frauds." We have noticed this case somewhat in detail, because, with respect to the somewhat complicated subject of trusts, it is more satisfactory to compare a case at bar with other adjudicated cases than to undertake to restate general rules in abstract language. (See also *Bayles* v. *Baxter,* 22 Cal. 575; and *Millard* v. *Hathaway,* 27 Cal. 119.) In *Brison* v. *Brison,* 75 Cal. 525, recently decided by this court, it was held that a wife can be compelled to reconvey to her husband land which he had conveyed to her upon her oral promise to reconvey the same when requested; and that a trust would have arisen from the confidential relation of the parties, even if there had been no fraudulent intent on the part of the wife at the time she took the deed not to reconvey. In the opinion of the court in that case, delivered by Hayne, C., the principles which govern the class of trusts now under consideration are very fully stated, and the leading authorities upon the subject cited; and the confidential relation of attorney and client is put in the same category with that of husband and wife.

The trust in the case at bar arose by operation of law; and it comes within nearly all the usual exceptions to the rule that a trust must be declared by a written instrument. The relation between the parties was of the most confidential character,—that of attorney and client; there was a transfer of the property to Conklin while the whole consideration was furnished by plaintiffs, in which case "a trust is presumed to result," as declared in section 853 of the Civil Code; the property was gained, or

detained by fraud, etc., and there was therefore a trust as provided by sections 2222 and 2224 of the Civil Code; and there was part performance of the agreement.

2. It appears from the complaint that the petition and schedule in insolvency of the said John Broder was verified before his attorney, the said defendant A. R. Conklin acting as a notary public. And it is argued for said defendant that said papers should have been verified before another officer; that therefore the whole insolvency proceedings were invalid; that therefore no title passed to said defendant by the assignee's deed; and that therefore there could have been no trust, etc. We shall not stop to inquire into the asserted defect in the proceedings in insolvency. Defendant, while holding on to the property which he received under said assignee's deed, cannot be heard here as against plaintiffs to assert a defect which occurred, if at all, by his own direction as attorney for the insolvent. Moreover, if the title did not pass through the deed of the assignee, it passed shortly afterward through the deed of the insolvent, which must be considered as a part of the whole transaction.

3. We see no reason for holding that the action was barred by the statute of limitations. Many of the arguments made upon this point by counsel for respondents are based upon asserted facts which do not appear upon the complaint. While the respondent remained in possession of the property, and before he repudiated the trust, the statute certainly did not begin to run. According to the complaint, he did not repudiate the trust until the 10th of May, 1884; and before that date plaintiffs had not discovered, and did not know or have any means of knowing, any of the fraudulent acts alleged. The action was commenced within two years thereafter, and under any correct view of the law it was commenced in time. The second amended complaint was filed within four years.

4. We think that the parties who are made plaintiffs and defendants are not improperly joined.

The judgment is reversed, with directions to the court below to overrule the demurrer to the complaint and allow defendants a reasonable time in which to answer.

SEARLS, C. J., SHARPSTEIN, J., and PATERSON, J., concurred.