[Civ. No. 10560.  First Appellate District, Division Two.—November 29. 1937.]

HARVEY E. WALLACE, Plaintiff and Respondent, v. CHARLOTTE M. RILEY, Defendant and Respondent; MINNIE WALLACE, Intervener and Appellant.

John L. Talt and Pierre A. Fontaine for Intervener and Appellant.

Fred B. Mellmann for Defendant and Respondent. .

JOHNSON, J., *pro tem.*—This appeal presents a controversy between living depositors asserting conflicting claims as joint tenants named in a bank account in joint tenancy,

created under section 15a of the Bank Act. (Stats. 1921, p. 1367.)

The appeal is by the intervener, Minnie Wallace, from a judgment based upon orders sustaining, without leave to amend, demurrers to the intervener's second amended complaint, which had been interposed by the plaintiff, Harvey E. Wallace, and the defendant, Charlotte M. Riley.

The complaint in intervention alleges that on August 10, 1933, the plaintiff, Harvey E. Wallace, began his action against the defendant, Charlotte M. Riley, seeking to quiet title to an undivided one-half interest as a joint tenant in a certain account, No. 8302, in the American Trust Company, formerly known as Mercantile Trust Company, in the names of Charlotte Riley and Harvey E. Wallace.

In respect of the claims of the intervener, it is then averred that upon August 5, 1924, by a written contract set forth in full, which was made by the intervener and Charlotte M. Riley, they agreed with each other and with the bank that all moneys then or thereafter deposited by said individuals or either of them, in an account numbered 4006, should be deposited, and received and held by the bank, together with all interest, dividends and accumulations, as property of both of said individuals as joint tenants, without consideration of its previous ownership, and should be payable to, and collectible by, either of said individuals during their joint lives; and after the death of either should belong to, and be the property of, the survivor.

The amount so deposited in said account at the time of the agreement was $1,064.99. Subsequently, as is alleged, such further deposits were made that on January 10, 1931, the amount to the credit of said account was $3,120.55. At that time a new joint tenancy account, numbered 8302, was opened in the same bank by Charlotte Riley and Harvey E. Wallace under a written agreement between them, set forth in full, in the same form as the agreement between the intervener and Charlotte M. Riley respecting the account numbered 4006. Thereupon the balance of $3,120.55 in account 4006 was transferred to the new joint tenancy account 8302, established in the names of Charlotte Riley and Harvey E. Wallace.

Harvey E. Wallace is the son of the intervener, Minnie Wallace; and in explanation of the creation of the new joint tenancy account, the intervener states that for some time

prior thereto she had been so seriously ill that she had been informed by her physician that she might die; and desiring, in case of her death, to preserve for her children her interest in the fund on deposit in the joint tenancy account 4006, she consented to the transfer of the amount held in that account to the new joint tenancy account 8302, opened in the names of Charlotte Riley and the intervener's son, Harvey E. Wallace. No consideration was rendered to the intervener by her son for her interest in the original account; but it is averred that the son orally agreed with his mother that if she should recover from her illness, he would hold, as trustee for her, his interest in all funds with which the new joint tenancy account 8302 should be credited, and would transfer to his mother his interest in that account upon her request.

On April 1, 1933, the new joint tenancy account had grown to $3,365.32; and on that day, according to the averments, the defendant, Charlotte M. Riley, without the knowledge or consent of either Harvey E. Wallace or the intervener, withdrew from the account, and appropriated to said defendant's own use, $2,182.97; and on April 4, 1933, the further sum of $182.33. By such withdrawals the balance to the credit of said account was reduced to $1,000.02; and that amount with accruals of interest is the subject of controversy between the parties to this action. The two amounts withdrawn by Charlotte M. Riley, aggregating $2,365.30, are the subject of appeal in a companion case (No. 10561) decided this day. (*Post*, p. 669 [74 Pac. (2d) 800].)

The intervener asserts that she has recovered from her illness, and has demanded of her son the delivery of the funds held by him in said account as trustee for her, but that the demand has been refused.

The prayer of the complaint in intervention is that all adverse claims be determined by the court; that Harvey E. Wallace be declared to be the owner of an undivided one-half interest in the joint tenancy account 8302, and adjudged accountable therefor to the intervener as trustee thereof for her benefit.

In some respects the complaint is not a model of impeccable pleading, and we are not at this time especially concerned with the form of the prayer. The essential question is whether the intervener has stated a cause showing an interest in the matter in litigation, or in the success of either of the parties, or an interest against both.

To the intervener's complaint, Harvey E. Wallace, the plaintiff in the action, interposed a general demurrer; and the defendant, Charlotte M. Riley, a demurrer both general and special. The special demurrer alleged in varied forms uncertainty, ambiguity and unintelligibility, in that the intervener omitted to state the ownership of the money at the time of creation of the original joint tenancy account 4006, or of the contributions, made either originally or by further deposits by the individuals designated as joint tenants; omitted also to make known the intentions of the respective parties concerning a present or future gift or otherwise; omitted further to state whether any consideration moved from the intervener, and if not, what the agreement between the parties was, and whether the intervener based her claims on the form of the deposit, or upon title or ownership in any of the funds before the deposit or at any other time.

We will address ourselves chiefly to the fundamental inquiry prompted by the general demurrers. This leads to consideration of the meaning and effect of section 15a of our Bank Act. The act as originally adopted in 1909 (Stats. 1909, p. 87) embodied in section 16 provisions which had been added in 1907 to the New York Bank Act. (N. Y. Laws 1907, p. 456.) The section, as copied from the New York statute, provided among other things that a deposit made by a person in the name of such depositor and another person "in form to be paid to either or the survivor of them" should become the property of such persons as joint tenants. This section of our act was repealed in 1919; but in 1921 section 15a was added to the Bank Act, re-enacting former section 16 (Stats. 1921, p. 1367), and incorporating also an amendment adopted in New York in 1914 (N. Y. Laws 1914, p. 1392). This clause forms the last sentence of section 15a, reading as follows: "The making of the deposit in such form shall, in the absence of fraud or undue influence, be conclusive evidence, in any action or proceeding to which either such savings bank or the surviving depositor is a party, of the intention of both depositors to vest title to such deposit and the additions thereto in such survivor."

In 1929 the language of the section was broadened so as to apply to deposits in the names of more than two persons with right of survivorship (Stats. 1929, p. 444); but this amendment does not otherwise change the sense of the previous reading.

As the provisions relating to accounts in joint tenancy were borrowed from New York, where their scope has been elucidated by judicial study, the precedents so afforded will be helpful, in addition to those of our own state, in the determination of the present case.

There has been considerable puzzlement on the part of courts respecting the development of a legalistic formula for upholding the interest of a survivor in a voluntary joint tenancy account, maintained without the concomitant of a delivery. Some courts, in fact the majority, adopt, in the absence of a statute, the theory of a gift where such intent is shown. Others sustain the interest of a survivor on the theory of the creation of a trust. Whichever theory is accepted, the general tendency is to take a liberal view of the transaction and to devise a way of effectuating the intent without scrupulous insistence on technical correctitude.

Under the rule imposed by section 1147 of the Civil Code, our courts have been restrained from adopting the theory of a gift. Prior to the adoption of the Bank Act they were driven to the theory that a trust was created by the proprietary depositor as to such amount as might remain at the depositor's death, and the bank became a trustee for the surviving beneficiary. Thus the trust theory was applied in cases such as the following: *Booth* v. *Oakland Bank of Savings,* 122 Cal. 19 [54 Pac. 370]; *Sprague* v. *Walton,* 145 Cal. 228 [78 Pac. 645]; *Carr* v. *Carr,* 15 Cal. App. 480 [115 Pac. 261]; *Drinkhouse* v. *German S. & L. Soc.,* 17 Cal. App. 162 [118 Pac. 953].

The provisions of the Bank Act, now contained in section 15a, serve to overcome the obstacle of section 1147 of the Civil Code; and by the opening of an account pursuant to the Bank Act an estate in joint tenancy is at once created without the necessity of any delivery and without resort to any trust theory.

The provisions of the Bank Act were designed for a double purpose: One, to protect the banks by giving them a statutory acquittance upon payment of funds in a joint tenancy account to the survivor; the other, to fix ownership of the deposit in the absence of any agreement to the contrary. (*In re Rehfeld's Estate,* 198 Mich. 249, 253 [164 N. W. 372].)

In the present case no question of survivorship is before us. In considering the general demurrers, we are confronted merely with the necessity of determining whether in legal

effect the statute, in the absence of a private agreement to the contrary, vests the title to the account in the parties named as joint tenants, and subjects the account to all the incidents of joint tenancy.

In construing the section of the New York statute, the court in *Clary* v. *Fitzgerald*, 155 App. Div. 659, 664 [140 N. Y. Supp. 536, 540] (affirmed in memo. 213 N. Y. 696 [107 N. E. 1075]), spoke as follows:

"We think, therefore, that the necessary effect of this provision of the statute is that the single fact, unexplained by other competent evidence, that a deposit in a Savings Bank, in the form in which this deposit was made, fixes the respective rights of the depositors named as joint owners of the property with all the incidents attaching to such ownership. It may be true that the depositors or their representatives as between themselves may be permitted to show by other competent evidence that title as joint owners was not intended to be established nor in fact conferred. Inasmuch as the actual agreement as to the title would be one between the named depositors themselves, the bank would not be a party to that agreement as to the ownership of the fund; and such an agreement might doubtless be proved even by parol evidence in a controversy between the parties to fix their relative rights to the fund."

In *Moskowitz* v. *Marrow*, 251 N. Y. 380 [167 N. E. 506, 66 A. L. R. 870], the subject received elaborate and illuminative treatment at the hands of Judge Kellogg and Chief Judge Cardozo in separate opinions, in both of which all the five other members of the court concurred. The effect of the statute is summarized by Judge Cardozo thus:

"The case hinges upon the meaning of a section of the Banking Law (sec. 249, subd. 3) which, though often considered in other courts, has not yet been construed by this court in an authoritative way.

"The statute, as I view it, does not mean that between the persons named as depositors a joint tenancy ensues at once and automatically, as an irrebuttable presumption, with the result that neither will be permitted even during the joint lives to prove against the other that the deposit was made with a contrary intention. For the bank which has paid, the form of the account is, indeed, an absolute protection, unless written notice has been given by either one of the depositors (cf. Banking Law, secs. 149, 198) 'not to.

pay such deposit in accordance with the terms thereof'. For the depositors themselves, the form is not conclusive in any contest during their joint lives as to the title to the moneys, nor conclusive after the death of either as to moneys then withdrawn.

"The final sentence of the section, added by amendment in 1914, is a gloss upon its meaning. 'The making of the deposit in such form shall, in the absence of fraud or undue influence, be conclusive evidence, in any action or proceeding to which either such savings bank or the surviving depositor is a party, of the intention of both depositors to vest title to such deposit and the additions thereto in such survivor'. The sentence is as significant for what it omits as for what it says. There is no statement that the form is to be taken as conclusive evidence in any action or proceeding to which *either* depositor is a party. It is to be conclusive evidence only in an action or proceeding in which the bank or the *surviving* depositor is a party. Even then it is to be conclusive in favor of the survivor, not in respect of any moneys withdrawn by either during life, but as to succession by survivorship in respect of any moneys forming part of the deposit after one of them is dead. The plain implication is that as between the depositors themselves, the form of the deposit gives rise to a presumption and nothing more, but that after the death of either leaving a deposit then subsisting, the presumption becomes conclusive as to the title of the survivor.

"A reading of the statute that would make the presumption irrebuttable except within these limits would do violence to intention and foster litigation. It would do violence to intention, for those who open such accounts have seldom any thought of restricting their enjoyment of the fund, their right to draw and spend, by the shackles of a formula. (Cf. *Beaver* v. *Beaver*, 117 N. Y. 421 [22 N. E. 940, 6 L. R. A. 403, 15 Am. St. Rep. 531].) It would foster litigation, for each of the two depositors, the one opening the deposit as fully as the other, would be subject to an accounting for moneys afterwards withdrawn, and forced to make division on the footing of equality. An irrebuttable presumption would close the door to testimony, direct or circumstantial that in opening the deposit the incidents of a joint tenancy had been varied by agreement. Many a family settlement, made in

the informal fashion to be expected among relatives, would be opened up for scrutiny after years of acquiescence.''

And in the allied case of *Marrow* v. *Moskowitz*, 255 N. Y. 219 [174 N. E. 460], Judge Cardozo for greater certainty restated the rule concisely in these words: ''When a bank account is opened in the form prescribed by statute (Banking Law, sec. 249, subd. 3), a presumption at once arises that the interest of the depositors is that of joint tenants. Upon the death of one of the depositors, this presumption becomes conclusive in favor of the survivor in respect of any moneys then left in the account. It continues to be a mere presumption in respect of any moneys previously withdrawn.''

To the same effect is *Estate of Porianda,* 256 N. Y. 423, 425 [176 N. E. 826]. What is said, however, concerning conclusiveness of the presumption in favor of the survivor presupposes, in case the fund originally deposited was at the time the property of only one of the depositors, that the establishment of the joint tenancy account was in such event effected with the knowledge and consent, express or implied, of the owner of the fund. (See *In re Buchanan's Estate,* 184 App. Div. 237 [171 N. Y. Supp. 708] ; *Heiner* v. *Greenwich Sav. Bank,* 118 Misc. 326 [193 N. Y. Supp 291] ; *McDonald* v. *Sargent,* 121 Misc. 437 [201 N. Y. Supp. 129] ; *Havens* v. *Havens,* 126 Misc. 155 [213 N. Y. Supp. 230].) Upon this point compare *Waters* v. *Nevis,* 31 Cal. App. 511 [160 Pac. 1081] and *Henry* v. *Hibernia S. & L. Society,* 5 Cal. App. (2d) 141, 143 [42 Pac. (2d) 395].

In California most of the reported cases have been concerned with the rights of the survivor after the death of the designated codepositor.

Those cases adhere consistently to the rule that, for purposes of tenure and survivorship, each joint tenant acquires an ownership in the whole fund at the time of the creation of the estate, or in the ancient phrase becomes an owner *per my et per tout.* Each, in the theory of the law, having an undivided moiety of the whole rather than the whole of an undivided moiety, the death of one joint tenant causes the previous concurrent interest of the survivor to ripen, without anything more, into his sole ownership of the whole, not by descent, but by the fact of survivorship and in virtue of the very acts knowingly and intentionally done in creating

the joint tenancy. Hence, no change of title occurs on the death of the codepositor; but the whole fund, of which theretofore the survivor was a joint tenant, remains to him as his sole and exclusive property, without regard to the original ownership. Under the Bank Act, the agreement of the parties, made in the prescribed form, is declared to be, in the absence of fraud or undue influence, conclusive evidence of the survivor's right; and neither the terms nor the legal effect of the agreement then may be changed or defeated by parol evidence.

Among the cases so in effect declaring are the following: *Estate of Gurnsey,* 177 Cal. 211, 215, 216 [170 Pac. 402]; *Kennedy* v. *McMurray,* 169 Cal. 287 [146 Pac. 647, Ann. Cas. 1916D, 515]; *Estate of Harris,* 169 Cal. 725–728 [147 Pac. 967]; *McDougald* v. *Boyd,* 172 Cal. 753, 756 [159 Pac. 168]; *Crowley* v. *Savings Union Bank & Trust Co.,* 30 Cal. App. 144, 150 [157 Pac. 516]; *McCarthy* v. *Holland,* 30 Cal. App. 495, 498 [158 Pac. 1045]; *Conneally* v. *San Francisco S. & L. Soc.,* 70 Cal. App. 180, 182, 183 [232 Pac. 755]; *Estate of Nelson,* 104 Cal. App. 613, 619 [286 Pac. 439]; *Reilly* v. *Filben,* 107 Cal. App. 722, 726, 727 [291 Pac. 454]; *Estate of Fritz,* 130 Cal. App. 725, 729, 730 [20 Pac. (2d) 361]; *Henry* v. *Bank of America,* 8 Cal. App. (2d) 353, 355, 356 [47 Pac. (2d) 1068].

While such conclusiveness prevails in aid of the survivor, that same rule does not obtain in a controversy involving the rights of the depositors during their joint lives. Though their interests and shares are presumed to be equal, nevertheless if there is proof of some special agreement between them at variance with the legal presumption of equality, their rights and interests will then be fixed in accordance with their own agreement.

In recognition of this exception as between the joint tenants themselves, the court in *Hill* v. *Badeljy,* 107 Cal. App. 598, 604 [290 Pac. 637], said: ''During the lifetime of both of the depositors either one would have the right to establish the real fact, whatever it might be, with reference to the account, and would have the right to bring an action in respect thereto.'' This passage is quoted with approval, and the principle so announced was applied, in *Spear* v. *Farwell,* 5 Cal. App. (2d) 111, 113, 114 [42 Pac. (2d) 391].

In *Hill* v. *Badeljy, supra,* which was a controversy between the administrator of the deceased depositor who was the

original owner of the fund, and the surviving joint tenant, the court, at page 606 of the opinion, expressed the view that even in an action between the designated depositors during the lifetime of both, parol evidence is not admissible to change the terms or the legal effect of their written agreement of joint . tenancy. No controversy between living depositors being before the court in that case, the expression was *obiter dictum*, and is not deemed pertinent in the case in hand. Furthermore in *Spear* v. *Farwell, supra,* where a joint tenancy account had been opened by Mr. and Mrs. Farwell with funds belonging to the wife, parol evidence was held to have been properly admitted to show Mrs. Farwell's superior claim upon the fund as against a levy by the plaintiff as a judgment creditor of Mr. Farwell. In that case a petition for hearing in the Supreme Court was denied.

From a study of the legal precedents, we conclude that when a joint tenancy account is created substantially, if not precisely, in the statutory form, a presumption of conjoint ownership of the entire fund in equal shares arises. The existence of such account, when unexplained by other competent evidence, serves to fix the respective rights of the joint depositors with all the incidents of joint tenancy; and in the absence of fraud or undue influence, the amount on hand upon the death of either joint tenant, belongs exclusively to the survivor, unless after death of a depositor who was the original owner of the fund, there shall be proof that the account was opened without his knowledge and consent, express or implied. During the lifetime of both of the designated depositors, however, the door is open to proof that the tenancy created was in truth something different from the character of the tenancy defined by the legal presumption. The relative rights of the parties are then dependent on the realities of the ownership.

Such then would have been the situation here, if the original joint tenancy account in the names of Charlotte M. Riley and the intervener had remained intact. According, however, to the complaint and the admissions implied in the demurrers, the entire amount of $3,120.55 in that account was withdrawn on January 10, 1931, and deposited at once in a new joint account in the same bank in the names of Charlotte Riley and Harvey E. Wallace, the intervener's son. At that time the intervener was seriously ill, and the transfer to the new account appears to have had her consent subject to the

oral agreement between herself and her son relative to his trusteeship. Subsequently there was withdrawn by Charlotte Riley, and appropriated to her own use, all but $1,000.02, remaining in that new account on April 4, 1933.

Under the allegations of the intervener's complaint, the intervener had an interest in the new account in the capacity of a beneficiary represented by her son as her trustee. That trustee's interest and rights in the joint tenancy account of Charlotte Riley and himself were fortified and protected by the same presumptions and incidents as had attached to the original account of Charlotte M. Riley and the intervener.

■ Contrary to the rule of the common law (which was applied in New York to a joint tenancy account in *Estate of Suter,* 258 N. Y. 104 [179 Pac. 310]), it has become the established principle in California that if money is taken from a joint tenancy account during the joint lives of the depositors, property acquired by the money so withdrawn, or another account into which the money is traced, will retain its character as property held in joint tenancy like the original fund, unless there has been a change in the character by some agreement between the parties. This departure from the rule of the common law was first announced in *Estate of R. T. Harris,* 169 Cal. 725, 728 [147 Pac. 967], and in determination of questions recently arising in the estate of his widow, was reaffirmed in *Estate of Harris,* 9 Cal. (2d) 649 [72 Pac. (2d) 873]. See, also, *Estate of McCoin,* 9 Cal. App. (2d) 480, 482 [50 Pac. (2d) 114]; *Lagar* v. *Erickson,* 13 Cal. App. (2d) 365, 370 [56 Pac. (2d) 1287]; *Re Kessler,* 217 Cal. 32 [17 Pac. (2d) 117]; *Young* v. *Young,* 126 Cal. App. 306, 312, 313 [14 Pac. (2d) 580]; *Chamberlain* v. *Chamberlain,* 2 Cal. App. (2d) 684, 688 [38 Pac. (2d) 790].

■ As between Charlotte Riley and the plaintiff, Harvey E. Wallace, the form of their agreement indicates an intent to create a joint tenancy with right of survivorship, and the presumption immanent in the statute applies, unless properly rebutted. The intervener has therefore an interest in the matter in litigation and in the success of the plaintiff as her trustee.

The general demurrer of Harvey E. Wallace admits the averments of the complaint that he verbally agreed with his mother that if she should recover from her illness, he would, as trustee for her, hold for her benefit his interest as a joint

666

tenant in all the funds in the new account, and would transfer his interest to her upon her request. It is further alleged in substance that he now repudiates the trust. This circumstance gives additional support to the complaint in intervention.

In case of a grant of real estate to one who receives it on a parol trust, repudiation of the trust is treated as a fraud cognizable in equity, where appropriate relief will be afforded. (*Cooney* v. *Glynn,* 157 Cal. 583, 587 [108 Pac. 506], and cases there cited; *Bradley Co.* v. *Bradley,* 165 Cal. 237 [131 Pac. 750]; *Alaniz* v. *Casenave,* 91 Cal. 41 [27 Pac. 521]; *Broder* v. *Conklin,* 77 Cal. 330 [19 Pac. 513].)

A like rule is applicable in the case of a parol trust for the purpose of having joint tenancy funds distributed to specified persons after the death of the trustor. (*Logan* v. *Ryan,* 68 Cal. App. 448, 455, 456 [229 Pac. 993].)

▇ There is nothing in the law to disqualify a joint tenant from trusteeship of his interest in the joint property; and in general whoever is capable of taking legal title, or a beneficial interest, in property may take it as trustee for another. (1 Perry on Trusts, sec. 39; 3 Pomeroy's Equity Jur., 4th ed., p. 2145.)

We conclude therefore that the intervener's complaint stated a cause of intervention, and that she was entitled to have the plaintiff's general demurrer to her complaint overruled.

▇ The demurrer of the defendant Charlotte M. Riley was both general and special. The brief filed in her behalf treats lightly the presumptions of law flowing from the statute, and assumes that the intervener contributed nothing to the joint account.

Both of the joint tenancy agreements were in writing, and in the form prescribed by section 15a of the Bank Act, which is to be deemed a part of each contract. The presumption is that a written instrument deliberately executed expresses the intention of the parties. (*Kayser* v. *Gorman,* 3 Cal. (2d) 478, 486 [44 Pac. (2d) 1041].) The agreement made by the joint tenants in each of the accounts expressly provided that the funds on deposit "shall be the property of both of us as joint tenants"; and the statute declares that funds so deposited and any additions, "shall become the property of such persons as joint tenants, and . . . shall be held for the exclusive use of such persons"; subject to payment to either

during the lifetime of both or to the survivor after the death of one of them.

In *Moskowitz* v. *Marrow*, 251 N. Y. 380 [167 N. E. 506, 66 A. L. R. 870], Judge Kellogg, after referring at page 386 to the consolidated provisions in the New York Laws of 1909 in the words just quoted from our section 15a, said in relation thereto: "When the Legislature has used a term having a well defined legal meaning, such as the term 'joint tenants', we must assume that it has advisedly employed it to express the meaning commonly attributed thereto."

And at page 390 he adds: "Not merely did the Legislature use the term 'joint tenants'; it provided that after the creation of the deposit, the funds deposited, together with all dividends thereon, should be held for the exclusive use of the joint depositors. It could not better have indicated that the term 'joint tenants', as used by it, was intended to possess that technical meaning which is accorded to it by the legal profession."

Then at page 396, speaking of these earlier provisions of the New York Act and the addition made thereto in 1914, which became part of our section 15a, Judge Kellogg marks a distinction, saying: "The other (that is, the earlier) provisions may be regarded as creating a rebuttable presumption of the making of a transfer; the added provision as creating an irrebuttable presumption, or 'conclusive evidence', as the provision itself states, of an effective transfer, in cases of survivorship only. By so interpreting the section all its parts would be given force and effect. We think that is the interpretation properly to be given."

Under the general rules appertaining to joint tenancy, whether in personalty or realty, the parties, without use of other words, are presumed to have equal rights as between themselves. (Schouler on Personal Property, 5th ed., p. 223; 7 C. J. 640; 1 Tiffany on Real Property, 2d ed., sec. 191; 1 Washburn on Real Property, 6th ed., p. 528; 33 C. J. 909.)

If, in contravention of the presumption of law, there was, in respect of the joint tenancies here under consideration, some different agreement concerning the interests of the joint tenants, or if there should be circumstances sufficient to overcome the presumption by clear and convincing proof, such facts would furnish defensive matter against the claim of equality of ownership, which the intervener asserts in her complaint.

In view of the terms of the joint tenancy agreements of the respective parties and the presumption inherent in the statute, in addition to the averments of the intervener's complaint as a whole, we are of the opinion that the complaint shows adequate grounds for intervention; and that it is sufficient in its allegations to state, first, a *prima facie* case of joint tenancy in equal shares between Charlotte M. Riley and the intervener in account 4006; and, secondly, by reason of transfer of the funds from that account to account 8302, sufficient to state a *prima facie* case of joint tenancy in equal shares in Charlotte Riley and Harvey E. Wallace, with the latter holding his share or interest in the capacity of trustee for the intervener. In this aspect the complaint is not vulnerable to either of the general demurrers interposed.

The special demurrer of Charlotte M. Riley pointed to several items of alleged uncertainty in the intervener's complaint. Evidence concerning the matters so specified might be admissible at a trial in so far as they might tend to overcome the legal presumption of equality of ownership; but the intervener was not required to anticipate possible defenses.

Taking the complaint in intervention as it reads, we conclude that it was not obnoxious to either general or special demurrer.

The judgment and the order sustaining the demurrers are therefore reversed, with directions to the trial court to enter an order overruling the demurrers and allow reasonble time for answer to the intervener's second amended complaint.

Spence, Acting P. J., and Sturtevant, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 27, 1938.