[Civ. No. 10561. First Appellate District, Division Two.—November 29, 1937.]

HARVEY E. WALLACE, Plaintiff and Respondent, v. CHARLOTTE M. RILEY et al., Defendants and Respondents; MINNIE WALLACE, Intervener and Appellant.

John L. Talt and Pierre A. Fontaine for Intervener and Appellant.

Fred B. Mellmann for Defendants and Respondents.

JOHNSON, J., *pro tem.*—This case is a companion to the case of *Wallace* v. *Riley,* No. 10560 (*ante,* p. 654 [74 Pac. (2d) 807]), in which Minnie Wallace, as intervener, appealed from a judgment entered against her upon an order sustaining demurrers to her second amended complaint in intervention. Decision of this court in that appeal reversing the judgment against said intervener, based on an order sustaining demurrers to her complaint, has been filed this day.

This appeal, like the appeal in case No. 10560, brings to the court for consideration rival claims of living depositors, named as joint tenants of certain bank accounts created in joint tenancy under section 15a of the Bank Act. (Stats. 1921, p. 1367.)

As in the companion case, this appeal is by the intervener, Minnie Wallace; and is taken from a judgment based on orders sustaining, without leave to amend, demurrers to the intervener's first amended complaint, which had been interposed, one by the plaintiff Harvey E. Wallace, the other by

the defendants Charlotte M. Riley, Gladys G. Grabill and Curtis E. Riley, Sr.

The complaint in intervention, which is in two counts, states facts differing in some respects from those stated in the companion case. The controlling principles of law, however, are the same in both cases, and therefore may advantageously be discussed here with less fullness than in the other case.

The intervener alleges in both counts of her complaint that on August 10, 1933, Harvey E. Wallace, as plaintiff, instituted an action against Charlotte M. Riley, Gladys G. Grabill, Curtis E. Riley, Sr., and Central Bank of Oakland, seeking to have a trust declared for said plaintiff's benefit in one-half of the funds on deposit in said bank in account No. 15781 in the names of Charlotte M. Riley and Curtis Ellerslie Riley, and also in account No. 15780 in the names of Charlotte M. Riley and Gladys G. Grabill.

Parenthetically, it may be stated that the Central Bank of Oakland is the successor of the former Central Savings Bank of Oakland, and that the bank is in a position of a mere stakeholder and refrains from entering into any controversy with any of the other parties.

Proceeding with the first count of her complaint, the intervener alleges that on April 20, 1923, by a written agreement set forth in full, she and the defendant Charlotte M. Riley agreed between themselves and the bank, then known as Central Savings Bank of Oakland, that all moneys then or at any time deposited by said individuals or either of them in an account, numbered 25951, should be so deposited by them, and received by the bank, upon such terms and conditions of repayment that the amount on deposit and all dividends thereon should be paid to said depositors or either of them, or to the survivor of them, or the executors, administrators and assigns of such survivor, and without reference to the original ownership of the moneys deposited.

While this agreement did not use the term "joint tenancy," it is nevertheless in the form authorizing the money on deposit to be paid to either depositor or the survivor of them. Hence under the statute it became a deposit in joint tenancy, subject to the provisions of section 15a, which is to be read as part of the contract; and the presumption is that a written instrument deliberately executed expresses the intention of

the parties. (*Kayser* v. *Gorman,* 3 Cal. (2d) 478, 486 [44 Pac. (2d) 1041].)

According to the complaint, the account was opened with a deposit of $1,029.62, and by further deposits made by Charlotte M. Riley and the intervener, together with additions of interest, the account of the codepositors had to its credit on January 10, 1931, the sum of $6,385.90. In the meantime, however, the number of the account was, on July, 1926, changed by the bank to number 2065; but the account continued to be maintained under the agreement of the codepositors dated April 20, 1923.

On January 10, 1931, the amount of $6,385.90, then on deposit in account numbered 2065, was transferred to a new account in the same bank, numbered 13480, which was opened by Charlotte M. Riley and Harvey E. Wallace, the son of the intervener, pursuant to a written agreement between said depositors, set forth in full, in the same terms as the agreement which had been made on April 20, 1923, by Charlotte M. Riley and the intervener.

The reason for that change, as stated by the intervener, was that she had been so seriously ill that she had been informed by her physicians that she might die; and desiring, in case of her death, to preserve for her children her interest in said fund on deposit in account No. 2065, she consented to the transfer of said amount on deposit in that account to the new account numbered 13490, opened in the joint names of Charlotte M. Riley and Harvey E. Wallace pursuant to their agreement of January 10, 1931.

No consideration was rendered to the intervener by her son for her interest in the account in which the intervener had been a codepositor with Charlotte M. Riley; but it is alleged that the son, Harvey E. Wallace, agreed orally with his mother that if she should recover from her illness, he would hold as trustee for her his interest in all funds with which the new account, numbered 13490, should be credited, and would transfer to his mother his interest in that account upon her request.

The amount to the credit of account 13490 had increased by April 1, 1933, to $7,198.69; and on that day, as alleged, Charlotte M. Riley, without the knowledge or consent of Harvey E. Wallace or the intervener, withdrew from the account and appropriated to her own use, the entire amount

of $7,198.69, and caused said sum to be transferred to a new account in the same bank, opened in the names of Charlotte M. Riley, Gladys G. Grabill and Curtis E. Riley, Sr. This apparently was not a joint tenancy account.

Thereafter on the same day one-half of the funds transferred to the new account was transferred to a distinct joint tenancy account in said bank, numbered 15781, opened in the names of Curtis Ellerslie Riley (sued herein as Curtis E. Riley, Sr.) and Charlotte M. Riley, as joint tenants; and the remaining one-half was transferred to another joint tenancy account, No. 15780, in the names of Charlotte M. Riley and Gladys G. Grabill as joint tenants.

The intervener alleges in addition that no consideration was paid to her or to Harvey E. Wallace by Gladys G. Grabill or Curtis E. Riley, Sr., for such transfers; and on information and belief alleges that no consideration was paid by said persons to Charlotte M. Riley, and that whatever interest said persons respectively have in said accounts 15781 and 15780 was received with full knowledge of the ownership of the interest of said Harvey E. Wallace and the intervener in the funds so transferred.

The second count of the complaint in intervention is more closely tied to the intervener's complaint in the companion case, No. 10560. In conformity with the intervener's complaint in that case, it is alleged here in the second count that on August 5, 1924, a joint tenancy account, numbered 4006, was opened in the names of Charlotte M. Riley and the intervener in the bank now known as American Trust Company, but at that time named Mercantile Trust Company. The account was established under a written agreement, set forth in full, whereby said depositors agreed between themselves and the bank that all moneys then or thereafter deposited by said individuals, or either of them, should be deposited, and received and held by the bank, together with all interest, dividends and accumulations, as property of both said individuals as joint tenants, without consideration of its previous ownership, and should be payable to, and collectible by, either of said individuals during their joint lives; and after the death of either should belong to, and be the property of, the survivor.

The account was so opened with a deposit of $1,064.99, and by subsequent additions the amount to the credit of

the account had increased by January 10, 1931, to $3,120.55. At that time, by reason of serious illness of the intervener, as alleged in the first count of her complaint in this action, the said amount to the credit of said account 4006 was transferred with the intervener's consent to a new joint tenancy account numbered 8302, opened in the same bank under a written joint tenancy agreement, set forth in full, which was executed by said Charlotte Riley and the intervener's son, Harvey E. Wallace. That agreement was in the same form as the joint tenancy agreement between Charlotte M. Riley and the intervener in relation to their joint tenancy account 4006. No consideration was paid by Harvey E. Wallace to his mother for her interest in account 4006, and the transfer was made on the son's oral agreement that if his mother should recover from her illness, he would hold in trust for her his interest in all funds in the new account 8302, and would transfer to her all such interest upon her request.

By April 1, 1933, the amount to the credit of that account was $3,365.32; and it is alleged that at that time Charlotte M. Riley, without the knowledge or consent of said Harvey E. Wallace or the intervener, withdrew from that joint tenancy account $2,182.97, and on April 4, 1933, the further sum of $182.33. After such withdrawals there remained in account 8302 a balance of $1,002.02, which is the subject of controversy in the companion case, No. 10560.

The intervener further avers that of said amounts so withdrawn by Charlotte M. Riley, aggregating $2,365.30, one-half was deposited in the Central Savings Bank of Oakland, now known as Central Bank of Oakland, in account No. 15781, to the credit of Charlotte M. Riley and Curtis Ellerslie Riley, Sr., as joint tenants, and the remaining half in account No. 15780 in that same bank to the credit of Charlotte M. Riley and Gladys G. Grabill as joint tenants.

The intervener states, as in the first count, that no consideration was paid by Gladys G. Grabill or Curtis E. Riley, Sr., to either Harvey E. Wallace or the intervener or to Charlotte M. Riley, for their interests in the funds so withdrawn from account No. 8302 in the American Trust Company, and that Gladys G. Grabill and Curtis E. Riley, Sr., had full knowledge of the ownership of Harvey E., Wallace and the intervener in said funds. She repeats

also the statement that Harvey E. Wallace has refused, upon her demand, to comply with his oral agreement in respect of the funds to be held by him in trust and delivered to her upon her request.

The prayer of the intervener is that it be declared that Charlotte M. Riley, Gladys G. Grabill and Curtis E. Riley, Sr., and the Central Bank of Oakland hold in trust for plaintiff, Harvey E. Wallace, one-half of the funds transferred from the aforesaid joint tenancy accounts, and held on deposit in said accounts 15781 and 15780 in said bank; and that said parties named as depositors in said accounts be required to deliver to said Harvey E. Wallace one-half of the funds on deposit therein together with any accruals of interest thereon; and that said Harvey E. Wallace, as trustee for the intervener, be required to deliver such moneys to her.

Charlotte M. Riley, Gladys G. Grabill and Curtis E. Riley, Sr., joined in a demurrer both general and special to each count of the complaint in intervention. The special demurrer is substantially the same as the special demurrer of Charlotte M. Riley in the companion case No. 10560, and the specifications need not be detailed here.

Harvey E. Wallace filed only a general demurrer to the intervener's complaint.

Section 15a of our Bank Act as adopted in 1921 was copied from provisions of the New York Bank Act then and still in force. Section 15a provides that when a deposit shall be made by any person in the names of such depositor and another person and in form to be paid to either or the survivor of them, such deposit, and any additions thereto made by either of such persons, ''shall become the property of such persons as joint tenants, and the same together with all dividends thereon shall be held for the exclusive use of such persons and may be paid to either during the lifetime of both or to the survivor after the death of one of them, . . . The making of the deposit in such form shall, in the absence of fraud or undue influence, be conclusive evidence, in any action or proceeding to which either such savings bank or the surviving depositor is a party, of the intention of both depositors to vest title to such deposit and the additions thereto in such survivor''.

Under the construction given to these provisions both in New York and California, the intentional creation by the

depositors of a bank account, substantially in the form prescribed, raises a presumption at once that the interest of the depositors is that of joint tenants in the sense commonly attributed in law to that term. Upon the death of either depositor, then in the absence of fraud or undue influence, the presumption of sole and exclusive ownership in the survivor becomes conclusive, or irrebuttable, in respect of any moneys then left in the account, but continues to be a rebuttable presumption as to any moneys previously withdrawn. ■ In like manner in controversies arising during the joint lives of the depositors, the form of the deposit is not conclusive on the subject of ownership in joint tenancy, and the door is open to proof that the tenancy created was in truth something different from the character of a joint tenancy according to its legal definition. Until otherwise proved, however, the presumption continues in favor of conjoint ownership of the entire fund by the codepositors in equal shares, with all the incidents of joint tenancy.

Such are the rules in New York as declared in Moskowitz v. Marrow, 251 N. Y. 380 [167 N. E. 506, 66 A. L. R. 870]; Marrow v. Moskowitz, 255 N. Y. 219 [174 N. E. 460]; Estate of Porianda, 256 N. Y. 423, 425 [176 N. E. 826]; Clary v. Fitzgerald, 155 App. Div. 659 [140 N. Y. Supp. 536]. Quotations from decisions in those cases are embodied in our opinion in the companion case (10560).

Most of the cases which have received judicial consideration by our courts under the section of our bank act have dealt with the rights of the survivor after the death of the designated codepositor, and citations will be found in the opinion in the companion case. Under the decisions in this state, it is the established rule that for purposes of tenure and survivorship, each joint tenant, acquires ownership of a joint interest in the whole fund at the time of creation of the joint tenancy, and on the death of either, the entire amount to the credit of the account, in the absence of fraud or undue influence, remains conclusively as the exclusive property of the survivor, without regard to the original ownership.

That same conclusiveness does not prevail, however, in a controversy raising an issue as to the rights of the depositors during their joint lives. Thus in Hill v. Badeljy, 107 Cal. App. 598, 604 [290 Pac. 637], the court said: "During the

lifetime of both of the depositors either one would have the right to establish the real fact, whatever it might be, with reference to the account, and would have the right to bring an action in respect thereto.'' (See, also, *Spear* v. *Farwell*, 5 Cal. App. (2d) 111, 113, 114 [42 Pac. (2d) 391].)

No question of a survivor's right is drawn into this case. The complaint in intervention rests primarily in its first count, on the creation of an account in joint tenancy on April 20, 1923, between Charlotte M. Riley and the intervener in the bank now known as Central Bank of Oakland. Owing to critical illness of the intervener, the sum of $6,358.90 in that account, then bearing the number 2065, was transferred with the intervener's consent to a new joint tenancy account (No. 13490) in the same bank in the names of Charlotte M. Riley and the intervener's son, Harvey E. Wallace, he serving as a trustee for his mother. Then on April 1, 1933, without the knowledge or consent of either the intervener or her son, Charlotte M. Riley caused the money in the joint tenancy account in the sum of $7,198.69 to be withdrawn and deposited in the same bank, one-half in a joint tenancy account (No. 15781) opened in the names of said Charlotte M. Riley and Curtis Ellerslie Riley (sued here as Curtis E. Riley, Sr.) as joint tenants, and the other half in an additional joint tenancy account (No. 15780) opened in the names of said Charlotte M. Riley and Gladys G. Grabill as joint tenants. These transfers, according to the allegations, were made with full knowledge on the part of Curtis E. Riley, Sr., and Gladys G. Grabill of the rights and interests of Harvey E. Wallace and the intervener.

The funds originally deposited in the names of Charlotte M. Riley and the intervener, together with the accumulations, are thus traced into the two final joint tenancy accounts numbered 15781 and 15780, in which Charlotte M. Riley is, in the one, a joint tenant with Curtis E. Riley, Sr., and in the other, a joint tenant with Gladys G. Grabill.

 Contrary to the canon of the common law our courts have established the rule that when money is taken from a joint tenancy account during the joint lives of the depositors, property acquired by the money so withdrawn, or another account into which the money is traced, will retain its character as property held in joint tenancy like the original fund, unless a change in the character has been effected by some agree-

ment between the parties. (*Estate of R. T. Harris,* 169 Cal. 725, 728 [147 Pac. 967]; *Estate of Maria L. Harris,* 9 Cal. (2d) 649 [72 Pac. (2d) 873]; *Estate of McCoin,* 9 Cal. App. (2d) 480, 482 [50 Pac. (2d) 114]; *Lagar* v. *Erickson,* 13 Cal. App. (2d) 365, 370 [56 Pac. (2d) 1287]; *In re Kessler,* 217 Cal. 32, 34 [17 Pac. (2d) 117]; *Young* v. *Young,* 126 Cal. App. 306, 312, 313 [14 Pac. (2d) 580]; *Chamberlain* v. *Chamberlain,* 2 Cal. App. (2d) 684, 688 [38 Pac. (2d) 790].)

Under the allegations of the second count of the intervener's complaint, Charlotte M. Riley did not withdraw all of the funds in the joint tenancy account No. 8302, held by her and Harvey E. Wallace, in the American Trust Company, to which had been transferred the funds in joint tenancy account No. 4006, originally established in said bank in the names of Charlotte M. Riley and the intervener as joint tenants. Out of the deposit of $3,365.32 to the credit of account No. 8302, Charlotte M. Riley withdrew a total of $2,365.30, which she caused to be deposited in the Central Bank of Oakland, and apportioned one-half thereof to the joint tenancy account No. 15781 in that bank in the names of herself and Curtis E. Riley, Sr., and the other one-half to the joint tenancy account No. 15780 in the names of herself and Gladys G. Grabill.

With the exception of $1,000.02 left in joint tenancy account No. 8302 in the American Trust Company, Charlotte M. Riley caused to be withdrawn all the moneys to the credit of that joint tenancy account, and all the moneys to the credit of the joint tenancy account No. 13490 in the Central Bank of Oakland, both such accounts being in the names of Charlotte M. Riley and Harvey E. Wallace as joint tenants. The moneys so withdrawn were then employed to create the joint tenancy accounts Nos. 15781 and 15780 in the Central Bank of Oakland.

Harvey E. Wallace began this action as plaintiff to have an adjudication of his rights and interests in those last mentioned accounts. By his general demurrer to the complaint in intervention, he admits that the moneys held in the original accounts, in which his mother was named as a joint tenant, were transferred to the accounts in which he was named as a joint tenant with Charlotte M. Riley; and that such transfers were made pursuant to an oral agreement on his part to act as trustee for his mother in respect of the

moneys so transferred. Such a parol trust, as stated in the companion case, is enforceable in equity; and the intervener, a beneficiary of the trust, has a definite interest in the matters in litigation and in the success of her son as the plaintiff in the action. Under the general rule, joint tenants are presumed to have equal interests as between themselves; but in respect of these joint tenancies created under the Bank Act, if there should be clear and convincing proof of some different agreement concerning the interests of the designated joint tenants now litigating rival claims, or if there should be circumstances sufficient to overcome the presumption inherent in the provisions of the statute, such facts may be asserted by way of defense against the claims made by the intervener in her complaint.

In view of the terms of the joint tenancy agreements of the respective parties and the presumptions flowing from the statute, in addition to the averments of the intervener's complaint, we are of the opinion that the complaint shows adequate grounds for intervention, and that it is sufficient to state, first, a *prima facie* case of joint tenancy in equal shares in the accounts in the Central Bank of Oakland and the American Trust Company opened in the names of Charlotte M. Riley and the intervener; and, secondly, by reason of the transfer of funds from those accounts to the respective joint tenancy accounts in those same banks, in the names of Charlotte M. Riley and Harvey E. Wallace, as joint tenants, the complaint is sufficient to state a *prima facie* case of joint tenancy in equal shares between those parties, with Harvey E. Wallace holding his share or interests in said accounts as trustee for the intervener; and thirdly, by reason of the circumstances attending the creation by Charlotte M. Wallace of said accounts Nos. 15781 and No. 15780 in the Central Bank of Oakland with moneys withdrawn from the joint tenancy accounts between herself and Harvey E. Wallace, we are of the opinion that the complaint in intervention is sufficient to entitle the intervener, Minnie Wallace, to join with the plaintiff as her trustee, in the relief sought by his complaint against the defendants Charlotte M. Riley, Gladys G. Grabill and Curtis E. Riley, Sr.

Accordingly, the complaint in intervention has, in our opinion, sufficient strength to resist the attack of the general demurrers interposed.

The special demurrer of the defendants, Charlotte M. Riley, Gladys G. Grabill, and Curtis E. Riley, Sr., is directed at several statements of alleged uncertainty. In view of what has been said, we deem it unnecessary to discuss the specifications in detail. Evidence concerning the matters so specified might be admissible at a trial in so far as they might tend to overcome the legal presumption of equality of ownership; but the intervener was not required to anticipate possible defenses.

Taking the complaint in intervention as it reads, we conclude that it was not vulnerable to either general or special demurrer.

The judgment and the order sustaining the demurrers are therefore reversed, with directions to the trial court to enter an order overruling the demurrers, and allow reasonable time for answer to the intervener's first amended complaint.

Spence, Acting P. J., and Sturtevant, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 27, 1938.